******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# IN RE CHRISTOPHER C.*
## (AC 47980)

Alvord, Elgo and Cradle, Js.**

*Syllabus*

The respondent father appealed from the judgment of the trial court terminating his parental rights with respect to his minor child and denying his motions for transfer of guardianship and for out-of-state placement of the child. The father claimed that the court abused its discretion in denying his motion to disqualify the judicial authority. *Held*:

This court declined to review the respondent father's claim that the trial court abused its discretion in denying the father's motion for disqualification, as the father, prior to trial, affirmatively waived any conflict and stated that he consented to the judge presiding over the trial.

Argued February 19—officially released April 14, 2025***

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Waterbury, Juvenile Matters, where the petition was amended to cite in Christopher C. as a respondent; thereafter, the court, *Torres, J.*, denied the respondent Christopher C.'s motion for disqualification; subsequently, the case was tried to the court, *Torres, J.*; thereafter, the respondent Christopher C. consented to the termination of his parental rights; judgment terminating the respondents' parental rights and denying the respondent Christopher C's motions

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

*** April 14, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

for transfer of guardianship and for out-of-state placement of the minor child, from which the respondent Christopher C. appealed to this court. *Affirmed.*

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent Christopher C.).

*Nisa Khan*, assistant attorney general, with whom were *Matthew Parenti*, assistant attorney general, and, on the brief, *William Tong*, attorney general, for the appellee (petitioner).

*Opinion*

PER CURIAM. The respondent father, Christopher C.,[1] appeals from the judgment of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating his parental rights with respect to his minor child, Christopher C., and denying the respondent's motions for transfer of guardianship and for out-of-state placement. On appeal, the respondent claims that the court abused its discretion in denying the respondent's oral motion for disqualification.[2] We affirm the judgment of the trial court.

The following procedural history is relevant to our resolution of this appeal. The child was born in August, 2023, and an order of temporary custody was issued a few days after the child's birth. On October 19, 2023, the child was adjudicated neglected and committed to the custody of the petitioner. On November 8, 2023, the petitioner filed a petition to terminate the respondent's parental rights as to the child.[3] The respondent's paternity of the child was established by the court on January

---

[1] The parental rights of the child's mother were terminated on December 13, 2023. She has not participated in this appeal. Our references in this opinion to the respondent are to Christopher C.

[2] The attorney for the minor child has filed a statement adopting the appellate brief of the petitioner.

[3] The petition alleged the following grounds for termination: (1) the respondent had abandoned the child; (2) there was no ongoing parent-child relationship with the respondent; and (3) the respondent had failed to achieve a sufficient degree of personal rehabilitation under General Statutes § 17a-

11, 2024. The respondent filed, and subsequently amended, a motion to transfer guardianship to the child's paternal grandmother, who at all relevant times lived in New York. The motion was consolidated for trial with the termination of parental rights petition.

On April 19, 2024, during the trial management conference, the respondent's counsel made an oral motion asking the court, *Torres*, *J.*, to recuse herself on the basis that the court had presided over an action involving the respondent, his older child, and the same proposed guardian who is the child's paternal grandmother. The following colloquy occurred:

"[The Respondent's Counsel]: Well, Your Honor, the thing that we still have to address is based on [the case involving the respondent's older child]. Your Honor presided on that case, I believe, in December . . . .

"[The Petitioner's Counsel]: November.

"[The Respondent's Counsel]: November, thank you. In doing so, Your Honor ruled against the proposed

112 (j) (3) (B) (i).

General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding, or (ii) is found to be neglected, abused or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

guardian in that case, which will be the same exact proposed guardian in this case . . . in four months or so, five months later. I guess I need to know from the court if I could potentially ask, Judge . . . does that ruling—is that ruling static as to [the respondent's older child] or . . . does that ruling implicate that this guardian is not suitable and worthy for any other children of my client's?

"The Court: Okay. Interesting. So, I just wanted to make sure that I understand it. So, what you're saying is, when I wrote the decision, did I exclude the proposed guardian in total and so I'll say it this way, when I wrote the decision it was with respect to [the case involving the respondent's older child], and the information I heard in that case led me to write the decision the way it was written. This case is a different case from my perspective, and I haven't heard the witnesses or evidence. Every case is individualized. It all depends on what is introduced and the evidence that I hear and the people who are presented. So, there's no guarantee that [the petitioner] will sustain its burden of proof. There's no guarantee that the transfer of guardianship will be resolved one way or the other because I need to hear what's happening. So, although I have seen, it's an exhibit and it may have some relevance as to factual findings that were made whether it's, you know, what dates that things happened, but the decision as to whether or not this particular guardian is appropriate depends on the circumstances of this particular case. The age of the child, communication with the child, the bond, because everything might be totally different. And even when we have cases where we have a constellation of multiple children, when we're dealing with mom and dad, we may make decisions that will say child's—the first and second child need to remain in care. Child three and four need to go back because it all depends on the interaction between the parent and a child. So,

I can't answer your question. I can't say whole cloth that I would say that person can never be a guardian because it all depends on so many different factors.

"[The Respondent's Counsel]: So, Your Honor, what you're communicating to me just if I can pare it back a little bit is that Your Honor's decision does not preclude having that guardian present a case in round two or in a different matter and having this court reconsider her status as suitable and worthy.

"The Court: Correct, because [the case involving the respondent's older child] was very different and it had to do a lot with the age of the child and also the relationship that that child had with other people. It may be complete—I don't know anything about this particular case. The folks that this child may be with. There's so many different factors that come into play when you're talking about placement and family and in [the case involving the respondent's older child] that didn't bear it out, but it doesn't mean in another case depending on the circumstances that it could have a different result.

"[The Respondent's Counsel]: Okay.

"The Court: So, I don't know. I don't know the answer. There's no blanket preclusion from my viewpoint.

"[The Respondent's Counsel]: Well, but I think the answer you're giving me is, I can still go forward, and this court will consider it.

"The Court: Absolutely. It's an open book, I think.

"[The Respondent's Counsel]: Your Honor, I think if I could have just one second. And, Your Honor, I do have one other thing which, you know, I say this with all due respect, but my client and I have talked about the fact that it's very difficult for him to, you know, trust the process if same judge, same guardian, four

months later, you know, being able to reach that different conclusion. So, I believe that I'm being, that part of my instruction is to seek to see if we can have a different judge hear this case and I say that with all due respect, Your Honor.

"The Court: No, I understand. So let me, sorry, I did look at it. Under [rule] 2.11 [of] the Code of Judicial Conduct under disqualification and it talks about whether or not there's an issue of impartiality, but one of the important factors to consider is why the person is impartial and when you're talking about that it seems to be more of some sort of personal relationships you have with it and it typically specifically excludes when you're issuing decisions or making rulings. So, in a very terse way you can say, well if you don't like my rulings then you're asking to be recused, but the canons as well as the Practice Book specifically exclude that particular issue and, even when you're being sued personally by a person, that does not automatically create a disqualification. It has to be whether or not there's an issue of impartiality meaning there is some action that's been taken subsequent that would cause an impartiality, and I don't think ruling on a specific case that is different from this one would put me in a position that qualifies for disqualification. So, your request is denied.

"[The Respondent's Counsel]: And is that an official— I mean obviously I didn't file an official written motion, Your Honor, but is that the official ruling of the court on my request?

"The Court: It is."

The consolidated trial was held on May 2 and 3 and June 18, 2024. On the first day of trial, the respondent executed and signed an affidavit consenting to the termination of his parental rights.[4] In addition, the respondent's counsel stated: "We would waive any conflict on

---

[4] In its memorandum of decision, the court noted that "[d]isposition on the termination was continued until the final day of trial so that [the respon-

the dispositional going forward, Your Honor, which I know is interesting because at one point there was a request for a potential recusal as part of the history of this case, but my client understands and he appreciates Your Honor can make a decision that is impartial." Counsel further stated: "[N]ow that we've consented and to the extent that there is [a conflict], I'm not sure if there absolutely is but we would waive any contest to a conflict as my client does, again, have faith that, you know, that we are in a situation where we can have a good presentation of evidence and an impartial decision maker."

On June 18, 2024, following the close of evidence, the court, *Torres, J.*, issued an oral decision terminating the respondent's parental rights as to the child and appointing the petitioner as the child's statutory parent. The court found, by clear and convincing evidence, that the respondent voluntarily had consented to the termination of his parental rights and that such termination was in the child's best interest. Furthermore, on the basis of the evidence presented at trial, the court denied the respondent's motion to transfer guardianship to the paternal grandmother. On July 2, 2024, the court issued a memorandum of decision denying the respondent's motion for out-of-state placement. This appeal followed.

The respondent's appeal is limited to the claim that the court abused its discretion in denying the respondent's oral motion for disqualification. Specifically, the respondent contends that the trial judge should have recused herself because she previously had presided over a contested hearing to transfer guardianship of his older child to the paternal grandmother. The petitioner argues that the respondent expressly waived his disqualification claim. We agree with the petitioner that

dent] could participate in the motion for transfer of guardianship and out-of-state placement."

the respondent waived this claim and, therefore, decline to review it.

"Rule 2.11 (a) of the Code of Judicial Conduct provides in relevant part that [a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . ." (Internal quotation marks omitted.) *State* v. *Lane*, 206 Conn. App. 1, 9, 258 A.3d 1283, cert. denied, 338 Conn. 913, 259 A.3d 654 (2021); see *In re Christopher C.*, 134 Conn. App. 464, 471–72, 39 A.3d 1122 (2012). "Appellate review of the trial court's denial of a defendant's motion for judicial disqualification is subject to the abuse of discretion standard." (Internal quotation marks omitted.) *State* v. *Lane*, supra, 9.

"[W]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . For many rights, waiver may be effected by action of counsel . . . especially decisions pertaining to the conduct of the trial . . . . In those instances, the [respondent] is deemed bound by the acts of his lawyer-agent . . . ." (Citations omitted; internal quotation marks omitted.) *In re Kylie P.*, 218 Conn. App. 85, 125–26, 291 A.3d 158, cert. denied, 346 Conn. 926, 295 A.3d 419 (2023). "When a party affirmatively waives a claim at trial, we generally do not afford review of that claim on appeal . . . ." (Internal quotation marks omitted.) *Allen* v. *Commissioner of Correction*, 167 Conn. App. 868, 872, 143 A.3d 1217, cert. denied, 323 Conn. 950, 151 A.3d 846 (2016).

In the present case, before the start of evidence on the first day of trial, the respondent's counsel asserted twice that the respondent waived any conflict and stated that the respondent "consented" to the trial judge

presiding over the case.[5] Because the respondent affirmatively waived the claim that Judge Torres should be disqualified, we decline to review the respondent's claim on appeal.

The judgment is affirmed.

---

[5] In his reply brief, the respondent states that he "does not dispute that the language used by trial counsel on the first day of trial is sufficient to meet the [petitioner's] burden as to waiver . . . ."

Instead, he contends that "[t]he failure to properly raise a concern of judicial bias is distinct from a willingness to proceed after a motion for recusal has been denied." Although we agree that a willingness to proceed would not be sufficient to constitute waiver, the present case involves express waiver of the claim that the respondent is now asserting on appeal.

Also, he raises, without authority in support, the argument that the judge had a duty sua sponte to recuse herself from the matter. Under the circumstances of this case, we are not persuaded by the respondent's argument.